T.C. Memo. 2014-109

UNITED STATES TAX COURT

LESLIE J. MOLINET, Petitioner, AND MICHAEL F. MOLINET, Intervenor v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 22461-12.            Filed June 9, 2014.

Adam L. Heiden and Keith Howard Johnson, for petitioner.

Michael F. Molinet, pro se.

Lynn M. Barrett, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, Judge: Pursuant to section 6015(e)(1),[1] petitioner seeks review

of respondent's determination that she is not entitled to relief from joint and

_____

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[*2] several liability for 2008 with respect to the joint Federal income tax return she filed with intervenor, her former spouse.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference. Petitioner resided in Florida at the time she filed the petition.

I.    Background

Petitioner is Cuban by birth. She met intervenor in Cuba in January 1998. She moved to the United States on a fiance visa later that year and married intervenor on October 24, 1998. They had a child together in 2002.

During the course of the marriage petitioner and intervenor had a joint bank account. The account was controlled primarily by intervenor. He paid the bills and managed the finances with minimal input from petitioner. He was never late on payments.

Petitioner worked as a medical assistant. Her wages were deposited directly into the joint bank account. Although she had access to the joint bank account, she rarely used it and did not write any checks on the account. She did not have a good understanding of the banking system in the United States on account of her Cuban upbringing. She relied on a weekly allowance from intervenor to pay her

[*3] expenses each week. Petitioner and intervenor began having marital difficulties in 2007. At that time petitioner decided to open an individual bank account. Thereafter, she did not use or otherwise access the joint bank account.

In 2007 petitioner, intervenor, and their child moved from Bowie, Maryland, to Jacksonville, Florida. Petitioner had previously been diagnosed with several health conditions that made her especially susceptible to cold weather, including cutaneous polyarteritis nodosa (CPN),[2] rheumatoid arthritis, and neuropathy. Petitioner believed that moving to Florida would help alleviate some of the symptoms that were frequently aggravated in the colder weather of Maryland.

In part to finance the move to Florida, intervenor took several distributions from his section 401(k) plan account. Intervenor withdrew a total of $117,791 from the account in 2008. Petitioner did not agree with intervenor's decision to withdraw funds from the account, but she did not feel as though she had a choice in the matter and reluctantly signed the required distribution forms. Intervenor deposited the proceeds of the distributions into the joint bank account. These funds were ultimately used by him to pay the remainder of the mortgage on his

---

[2] CPN is a skin condition that causes inflamation of the blood vessels, cysts, and skin ulcers.

[*4] home in Maryland[3] and to make a $29,000 downpayment on a home in Jacksonville, Florida. Some of the funds were also used to replace household goods that were damaged during the move and to furnish the new home in Jacksonville.

On or about April 15, 2009, petitioner and intervenor timely filed a joint Form 1040, U.S. Individual Income Tax Return, for 2008. They reported the distributions from intervenor's section 401(k) plan account on their tax return. They reported tax due of $30,938.[4] At the time the 2008 tax return was filed, petitioner did not believe that she and intervenor had any financial problems and was convinced that intervenor could pay the tax due. Petitioner has complied with all Federal income tax obligations since 2008.

Petitioner and intervenor separated in July 2008. Their divorce was finalized on November 18, 2009, when a circuit court in Duval County, Florida, issued a consent final judgment of dissolution of marriage (final judgment). As a result of the divorce, and pursuant to the final judgment, intervenor became the sole owner of the Jacksonville home and all of the furnishings therein. Paragraph

---

[3] Though the property was referred to as the "family home", the property was, in fact, owned solely by intervenor.

[4] Sufficient funds were not withheld from the distributions to pay the tax liability associated with the distributions.

[*5] 12 of the final judgment assigned the "2008 IRS debt (approximately $31,000.00)" to intervenor. Intervenor also became obligated to pay petitioner child support. Both parties were represented by counsel in the divorce proceedings, and both parties and their counsel signed the final judgment.

## II.     Request for Innocent Spouse Relief

On March 8, 2011, petitioner filed Form 8857, Request for Innocent Spouse Relief. On August 1, 2012, the IRS issued a final determination denying petitioner's request for innocent spouse relief. On September 10, 2012, petitioner timely filed a petition with this Court seeking review of respondent's determination. At trial respondent conceded that petitioner is entitled to relief. However, pursuant to section 6015(e)(4) and Rule 325, petitioner's former spouse intervened as a party in this case to oppose her request for relief.

### OPINION

## I.     Section 6015(f)

In general, a spouse who files a joint Federal income tax return is jointly and severally liable for the entire tax liability. Sec. 6013(d)(3). However, a spouse may be relieved from joint and several liability under section 6015(f) if: (1) taking into account all the facts and circumstances, it would be inequitable to

**[*6]** hold a taxpayer liable for any unpaid tax; and (2) relief is not available to the spouse under section 6015(b) or (c).  Sec. 6015(f)(1) and (2).

Subsections (b) and (c) of section 6015 apply only in the case of "an understatement of tax" or "any deficiency" in tax, and do not apply in the case of underpayments of tax reported on joint tax returns.  Sec. 6015(b)(1)(B), (c)(1); Hopkins v. Commissioner, 121 T.C. 73, 88 (2003); see also Block v. Commissioner, 120 T.C. 62, 66 (2003).  Because petitioner seeks relief from an underpayment of tax, she is not entitled to relief under section 6015(b) or (c) and may look only to section 6015(f) for relief from joint and several liability.

The Commissioner has published revenue procedures listing the factors that are normally considered in determining whether section 6015(f) relief should be granted.  See Rev. Proc. 2013-34, 2013-43 I.R.B. 397, modifying and superseding Rev. Proc. 2003-61, 2003-2 C.B. 296.  We consider these factors in the light of the attendant facts and circumstances, but we are not bound by them.  See Pullins v. Commissioner, 136 T.C. 432, 438-439 (2011); Sriram v. Commissioner, T.C. Memo. 2012-91, slip op. at 9-10.

In determining whether petitioner is entitled to section 6015(f) relief we apply a de novo standard of review as well as a de novo scope of review.  See Porter v. Commissioner, 132 T.C. 203 (2009); Porter v. Commissioner, 130 T.C.

**[\*7]** 115 (2008); see also Commissioner v. Neal, 557 F.3d 1262 (11th Cir. 2009), aff'g T.C. Memo. 2005-201.  Petitioner bears the burden of proving that she is entitled to relief.  See Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), aff'd, 101 Fed. Appx. 34 (6th Cir. 2004).

A.     Threshold Conditions for Granting Relief

The guidelines begin by establishing threshold requirements that, the Commissioner contends, must be satisfied before an equitable relief request may be considered.  See Rev. Proc. 2013-34, sec. 4.01, 2013-43 I.R.B. at 399-400.  Those conditions are:  (1) the requesting spouse filed a joint return for the taxable year for which relief is sought; (2) the relief is not available to the requesting spouse under section 6015(b) or (c); (3) the claim for relief is timely filed; (4) no assets were transferred between the spouses as part of a fraudulent scheme; (5) the nonrequesting spouse did not transfer disqualified assets to the requesting spouse; (6) the requesting spouse did not knowingly participate in the filing of a fraudulent joint return; and (7) absent certain enumerated exceptions,[5] the tax liability from

_____

[5] The IRS will consider granting relief regardless of whether the understatement, deficiency, or underpayment is attributable (in full or in part) to the requesting spouse if any of the following exceptions apply:  (1) attribution solely due to the operation of community property law, (2) nominal ownership, (3) misappropriation of funds, (4) abuse, and (5) fraud committed by the nonrequesting spouse.  Rev. Proc. 2013-34, sec. 4.01(7), 2013-43 I.R.B. 397, 399-

(continued...)

**[*8]** which the requesting spouse seeks relief is attributable to an item of the nonrequesting spouse.  We find that petitioner has met the threshold conditions for relief.

B.  Elements for Streamlined Determination

When the threshold conditions have been met, the guidelines allow a requesting spouse to qualify for a streamlined determination of relief under section 6015(f), if all of the following conditions are met:  (1) the requesting spouse is no longer married to, is legally separated from, or has not been a member of the same household as the other person at any time during the 12-month period ending on the date the Service makes its determination; (2) the requesting spouse will suffer economic hardship if relief is not granted; and (3) in an underpayment case such as this, the requesting spouse had no knowledge or reason to know when the return was filed that the nonrequesting spouse would not or could not pay the tax liability reported on the joint tax return.  Rev. Proc. 2013-34, sec. 4.02, 2013-43 I.R.B. at 400.

---

[5](...continued)
400.

**[\*9]**   We find that petitioner has not established that she would suffer economic

hardship if relief were not granted, and thus she does not qualify for a streamlined

determination.  See infra pp. 10-11.

C.      Factors Used To Determine Whether Relief Will Be Granted

Where, as here, a requesting spouse meets the threshold conditions but fails

to qualify for relief under the guidelines for a streamlined determination, a

requesting spouse may still be eligible for equitable relief if, taking into account

all the facts and circumstances, it would be inequitable to hold the requesting

spouse liable for the underpayment.  See Rev. Proc. 2013-34, sec. 4.03, 2013-43

I.R.B. at 400.  The guidelines list the following nonexclusive factors that the

Commissioner takes into account when determining whether to grant equitable

relief:  (1) marital status; (2) economic hardship; (3) in the case of an

underpayment, knowledge or reason to know that the nonrequesting spouse would

not or could not pay the tax liability reported on the joint tax return; (4) legal

obligation; (5) significant benefit; (6) compliance with tax laws; and (7) mental or

physical health.  Id.

**[*10]** In making our determination under section 6015(f), we consider these factors as well as any other relevant factors. No single factor is determinative, and all factors shall be considered and weighed appropriately. See Pullins v. Commissioner, 136 T.C. at 448; Haigh v. Commissioner, T.C. Memo. 2009-140, slip op. at 34-35.

### 1.    Marital Status

If the requesting spouse is no longer married to the nonrequesting spouse, this factor will weigh in favor of relief. Rev. Proc. 2013-34, sec. 4.03(2). For purposes of this section a requesting spouse will be treated as being "no longer married to the nonrequesting spouse" if the requesting spouse is divorced from the nonrequesting spouse. Id. sec. 4.03(a)(i). Petitioner and intervenor were divorced before she filed her request for innocent spouse relief. Accordingly, this factor weighs in favor of granting relief to petitioner.

### 2.    Economic Hardship

Generally, economic hardship exists when collection of the tax liability will render the requesting spouse unable to meet basic living expenses. Id. sec. 4.03(b), 2013-43 I.R.B. at 401. If denying relief from joint and several liability will not cause the requesting spouse to suffer economic hardship, this factor may be neutral. Id. Petitioner receives child support payments from intervenor and has

**[*11]** been working as a medical assistant for the past seven years. Her request for innocent spouse relief indicates that her monthly income is approximately $3,616 and that her monthly expenses are approximately $3,100. On the basis of the record, petitioner has not proven that she will suffer economic hardship if we deny her relief. We find that this factor is neutral.

3.    Knowledge or Reason To Know

In the case of an income tax liability that was properly reported but not paid, consideration is given to whether the requesting spouse knew or had reason to know as of the date the return was filed or within a reasonable period of time after the filing of the return that the nonrequesting spouse would not or could not pay the tax liability. Id. sec. 4.03(c)(ii). This factor will weigh in favor of relief if the requesting spouse reasonably expected the nonrequesting spouse to pay the tax liability reported on the return. Id. This factor will weigh against relief if, on the facts and circumstances of the case, it was not reasonable for the requesting spouse to believe that the nonrequesting spouse would or could pay the tax liability shown on the return. Id.

In making the determination whether the requesting spouse had reason to know, consideration is given to various factors, including: (1) the requesting spouse's level of education, (2) the requesting spouse's degree of involvement in

**[*12]** the activity generating the income tax liability, (3) the requesting spouse's involvement in business and household financial matters, and (4) the requesting spouse's business or financial expertise. Rev. Proc. 2013-34, sec. 4.03(2)(c)(iii), 2013-43 I.R.B. at 402.

Petitioner was born and brought up in Cuba and did not move to the United States until 1998. The banking system in the United States has been difficult for petitioner to understand because of her Cuban upbringing. For this reason intervenor paid the bills and controlled nearly all aspects of the finances with minimal input from petitioner throughout the marriage.

In 2008 intervenor took several taxable distributions totaling $117,791 from his section 401(k) plan account. Although petitioner did not agree with intervenor's decision to take the distributions, she did not feel as though she had choice in the matter and reluctantly signed the required distribution forms.

On or about April 15, 2009, petitioner and intervenor timely filed a joint Federal income tax return for 2008 on which they reported tax due of $30,938. At the time they filed the return, petitioner reasonably believed that she and intervenor did not have any financial problems and that intervenor could pay the tax due. Accordingly, this factor weighs in favor of relief.

**[\*13]**        4.        <u>Legal Obligation</u>

This factor will weigh in favor of relief if the nonrequesting spouse has the sole legal obligation to pay the outstanding income tax liability pursuant to a divorce decree or agreement. <u>Id.</u> sec. 4.03(d). Intervenor has the legal obligation to pay the tax liability for 2008 pursuant to paragraph 12 of the final judgment signed by him and petitioner. He and petitioner were represented by counsel, and he and petitioner, and their respective counsel, signed the final judgment. This factor weighs in favor of relief.

        5.        <u>Significant Benefit</u>

This factor considers whether the requesting spouse received a significant benefit, beyond normal support, from the unpaid income tax liability. <u>Id.</u> sec. 4.03(e). Normal support is measured by the circumstances of the particular parties. <u>Porter v. Commissioner</u>, 132 T.C. at 212. This factor will weigh in favor of relief if the nonrequesting spouse significantly benefited from the unpaid tax or understatement and the requesting spouse had little or no benefit, or the nonrequesting spouse enjoyed the benefit to the requesting spouse's detriment. Rev. Proc. 2013-34, sec. 4.03(e).

It is clear that petitioner did not use the funds from the distribution to live a lavish lifestyle, to buy luxury assets, or to take expensive vacations. To the

**[*14]** contrary, intervenor used the funds to: (1) pay off the mortgage on his home in Bowie, Maryland, (2) make a downpayment on a new home in Jacksonville, Florida, which he received in the divorce, and (3) purchase furnishings for the Jacksonville home. Accordingly, we find that this factor weighs in favor of relief.

### 6. Compliance With Income Tax Laws

This factor considers whether the requesting spouse has made a good-faith effort to comply with the Federal income tax laws in years after the year for which relief is requested. Id. sec. 4.03(f). Petitioner has complied with the Federal income tax laws in the years after 2008. Thus, this factor weighs in favor of relief.

### 7. Mental or Physical Health

This factor considers whether the requesting spouse was in poor physical or mental health. This factor will weigh in favor of relief if the requesting spouse was in poor mental or physical health at the time the return or returns to which the request for relief relates were filed, at the time the requesting spouse reasonably believed the return or returns were filed, or at the time the requesting spouse requested relief. Id. sec. 4.03(g), 2013-43 I.R.B. at 403. At trial petitioner credibly testified she suffers from rheumatoid arthritis, neuropathy, and CPN, an autoimmune condition that causes inflammation of the blood vessels, cysts, and skin ulcers. Thus, this factor weighs in favor of relief.

**[*15]** D.     <u>Conclusion</u>

Six of the factors weigh in favor of granting petitioner relief, one is neutral, and no factor weighs against granting relief.  We find that the equities lie in petitioner's favor and hold that she is entitled to relief from joint and several liability for 2008 under section 6015(f).

We have considered all arguments made in reaching our decision and, to the extent not mentioned, we conclude that they are moot, irrelevant, and without merit.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>petitioner</u>.